# UNITED STATES DISTRICT COURT
# DISTRICT OF IDAHO

| | |
|---|---|
| MICHAEL PARISH, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES LIABILITY INSURANCE COMPANY, a Pennsylvania corporation,<br><br>Defendant. | Case No.: 10-CV-00219-REB<br><br>**MEMORANDUM DECISION AND ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**(Docket No. 13)** |

Currently pending before the Court is Defendant's Motion for Summary Judgment (Docket No. 13). Having carefully reviewed the record, participated in oral argument, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## BACKGROUND

As an employee of Integra Information Technologies ("Integra"), Plaintiff Michael Parish was paid a base salary and commissions on sales. This action relates in no small part to these sales commissions. Specifically, Plaintiff claims that, prior to his May 25, 2007 termination, he was owed upwards of $37,500.00 in commissions - even entering into a "memorandum regarding the termination of his employment" (the "termination agreement") with an Integra representative, outlining the schedule for such commissions to be paid. Plaintiff ultimately did not receive his commissions and, on August 29, 2007, filed suit against Integra in Idaho state court.

**MEMORANDUM DECISION AND ORDER - 1**

At the time of the alleged unpaid commissions, Integra was insured under an Employment Practices Liability Policy ("EPL Policy"), issued by Defendant United States Liability Insurance Company. On September 11, 2007, Integra sought coverage under its EPL Policy for defense and indemnification related to Plaintiff's claims in state court. Defendant denied coverage on September 21, 2007, claiming that Plaintiff's claims related to Integra's handling of any commissions owing to Plaintiff and were not covered under the EPL Policy.[1]

On November 6, 2008, Plaintiff reached a financial settlement with Integra, resolving the state court lawsuit. Relevant here, as part of that settlement Plaintiff was assigned all of Integra's claims against Defendant as to Defendant's above-mentioned decision to deny coverage. This lawsuit followed and, with it, claims against Defendant for (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) bad faith, and (4) declaratory relief.

After removing this action from Idaho state court, Defendant argues that Plaintiff's underlying claims against Integra (and, likewise, the genesis of the claims assigned to Plaintiff and now asserted against Defendant) were predicated on Integra's alleged failure to pay Plaintiff his commissions - nothing more. According to Defendant, an employer's failure to fulfill payment obligations (salary, commissions, or otherwise) is not among the employment-related acts covered within its EPL Policy. As a result, Defendant claims that it owed no duty to defend

---

[1] In the meantime, however, on September 17, 2007, Plaintiff filed his First Amended Complaint against Integra in the original, state court action, asserting the following causes of action: (1) violation of the Idaho Wage Claim Act; (2) breach of contract against Integra; (3) breach of the implied covenant of good faith and fair dealing against Integra; and (4) breach of implied covenant of good faith and fair dealing in employment contract. *See* First Am. Compl. at ¶¶ 15-37, attached as Ex. B to Lyon Aff. at ¶ 3 (Docket No. 13, Att. 4). Nearly eight months later, on May 12, 2008, Integra's counsel sent Defendant a copy of that First Amended Complaint, requesting that Defendant reconsider its coverage decision. Three days later, on May 15, 2008, Defendant again denied coverage.

**MEMORANDUM DECISION AND ORDER - 2**

and/or indemnify Integra, thus concluding in its Motion for Summary Judgment that there could be no breach of the EPL Policy to substantiate Plaintiff's claims.

## DISCUSSION

### A. The Summary Judgment Standard

One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool [ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The evidence, including all reasonable inferences which may be drawn therefrom, must be viewed in a light most favorable to the non-moving party and the Court must not make credibility findings. *See id*. at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or

deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in his favor. *See id*. at 256-57. The non-moving party must go beyond the pleadings and show "by [his] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 324.

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (quoting *Forsberg v. Pac. Northwest Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003). Statements in a brief, unsupported by the record, cannot create an issue of fact. *Barnes v. Independent Auto. Dealers*, 64 F.3d 1389, 1396 n. 3 (9th Cir. 1995).

**B.    Policy Coverage**

To the parties' credit, there is little disagreement concerning the facts giving rise to the instant action. *See, e.g.*, Pl.'s Mem. in Opp. to Mot. for Summ. J., p. 2 (Docket No. 16) ("The facts relevant to this motion are fully set forth within the Defendant's Memorandum in Support of Motion for Summary Judgment.").[2] Suffice it to say, the parties disagree over the interpretation of those facts - namely, the meaning of the term "wrongful termination" and, in turn, the application of the EPL Policy's coverage provisions.

---

[2] Additionally, Plaintiff did not file any separate statement of material facts which he contends are in dispute. *See* Dist. Idaho Loc. Civ. R. 7.1(c)(2).

**MEMORANDUM DECISION AND ORDER - 4**

As mentioned above, Defendant argues that the EPL Policy does not cover an insured's failure to fulfill payment obligations and, because each of Plaintiff's underlying claims against Integra speaks to an alleged failure to pay, it has no duty to defend/indemnify and, as such, is incapable of any related breach. Regardless, Defendant alternatively claims that its alleged breaches do not amount to Plaintiff's wrongful termination, which is a specifically covered event under the EPL Policy. Plaintiff naturally disagrees, arguing that in addition to originally bringing claims for unpaid wages against Integra, he *also* asserted a covered wrongful termination claim against Integra via his claim for breach of the implied covenant of good faith and fair dealing as to his *employment* contract with Integra (distinct from the termination agreement). At the very least, Plaintiff contends that the EPL Policy's definition of wrongful termination is ambiguous or, even, illusory.

Therefore, in resolving Defendant's Motion for Summary Judgment, this Court must decipher certain terms within the EPL Policy and, if necessary, apply such defined terms to the parties' conduct here.

    1.    <u>Standard for Interpreting Insurance Contracts</u>

Generally, Idaho courts construe insurance contracts in accordance with their plain, unambiguous language; but where the insurance contract is ambiguous, it must be construed in a light most favorable to the insured and in a manner providing full coverage for the indicated risks, rather than narrowing its protection. *See Axis Surplus Ins. Co. v. Lake CDA Dev.*, 2008 WL 4238966, *2 (D. Idaho 2008) (citing *Cascade Auto Glass, Inc. v. Idaho Farm Bureau Ins. Co.*, 141 Idaho 660 (Idaho 2005)). "In construing an insurance policy, the Court must look to the plain meaning of the words to determine if there are any ambiguities." *Id*. This

determination is a question of law for the Court, and the Court must construe the insurance policy as a whole, not by isolated phrases. *Id*.

Like other contracts, insurance policies are ambiguous if they are reasonably subject to conflicting interpretations. *Id*. If so, its meaning is controlled by the underlying intent of the parties. *See Mintun v. Blades*, 2008 WL 711636, *16 (D. Idaho 2008) (citing *Navarrete v. City of Caldwell*, 949 P.2d 597 (Idaho Ct. App. 1997)). Intent is a question of fact, to be determined by the factfinder; in contrast, if a contract is unambiguous, the determination of the contract's meaning and legal effect is a question of law. *Id*.

"The burden is on the insurer to use clear and precise language if it wishes to restrict the scope of coverage and exclusions not stated with specificity will not be presumed or inferred. *See Axis* at *2 (quoting *Clark v. Prudential Prop. and Cas. Ins. Co.*, 66 P.3d 242, 245 (Idaho 2003)). However, standardized contract language must necessarily be somewhat general, in anticipation of varying circumstances of the facts. *See Axis* at *2 (citing *Foster v. Johnstone*, 685 P.2d 802, 806 (Idaho 1984)). "[W]here the policy language is clear and unambiguous, coverage must be determined, as a matter of law, according to the plain meaning of the words used." *See Axis* at *2 (quoting *Cascade*, 115 P.3d at 754 (internal citation and quotation omitted)).

    2.    <u>Plaintiff's Underlying Claims Against Integra, Unpaid Commissions, and the EPL Policy</u>

Defendant's Motion for Summary Judgment necessarily turns on the claims initially asserted against Integra - before the instant action even began. That is, as Defendant points out, "[I]f [Plaintiff's] allegations against Integra were not covered by the policy, then all of Plaintiff's claims fail in the instant case." *See* Def.'s Mem. in Supp. of Mot. for Summ. J., p. 4 (Docket No.

13, Att. 1). Answering this question requires an examination of Plaintiff's original claims against Integra, contrasted against the terms of the EPL Policy.

    *a.*  *The EPL Policy Does Not Cover Integra's Alleged Failure to Pay Plaintiff's Commissions*

The EPL Policy is a "Claims Made Policy," covering only those claims made against Integra during the applicable policy period. *See* EPL Policy, attached as Ex. A to Lyon Aff. at ¶ 2 (Docket No. 13, Att. 3).

A "claim," according to the EPL Policy, is either (1) "any written notice received by any Insured[3] that any person or entity intends to hold an Insured responsible for a Wrongful Employment Act"; or (2) "any judicial or administrative proceeding initiated against any Insured seeking to hold an Insured responsible for a Wrongful Employment Act . . . ." *See id.*

The EPL Policy goes on to define "wrongful employment act" as "any actual or alleged act of: (1) Discrimination; (2) Harassment; (3) Retaliation; (4) Wrongful Termination[4]; (5) employment related misrepresentation; (6) negligent evaluation, training or supervision of Employees; (7) failure to enforce adequate policies and procedures relating to any Wrongful Employment Act; (8) wrongful discipline; (9) wrongful deprivation of career opportunity; (10) negligent violation of the Family and Medical Leave Act of 1993; or (11) acts described in clauses (1) through (10) . . . arising out of the use of the Organization's Internet, e-mail, telecommunication or similar systems, including the failure to provide and enforce adequate

---

  [3] Otherwise uncapitalized words that *are* capitalized within the EPL Policy indicate a term expressly defined elsewhere in the EPL Policy itself.

  [4] The EPL Policy's definition of "wrongful termination," though not particularly relevant at this particular point in the discussion, is nonetheless integral to Plaintiff's opposition to Defendants' summary judgment efforts. *See infra* at pp. 12-19.

**MEMORANDUM DECISION AND ORDER - 7**

policies and procedures relating to such use of the Organization's Internet, e-mail, telecommunication or similar systems . . . ." *See id.*

With all of this in mind, the Court concludes that a claim premised upon an employer's failure to pay wages, including commissions, does not constitute a wrongful employment act, covered under the EPL Policy.[5] Both parties appear to agree on this point. *See* Def.'s Mem. in Supp. of Mot. for Summ. J., p. 7 (Docket No. 13, Att. 1) ("[T]he insuring agreement's absence of failure to pay as a covered act, and the severe 'moral hazard' problem including such coverage would create, the reasonable construction of the policy is that failure to pay was not covered."); *see also* Pl.'s Mem. in Opp. to Mot. for Summ. J., pp. 5-6 (Docket No. 16) ("Parish does not dispute that the claim for Violation of the Idaho Wage Claim Act . . . is a claim for unpaid wages. Parish further recognizes that, as such, the claim is not covered by the Policy.").

---

[5] This is consistent with the general tenor of other opinions addressing the interplay between an employer's alleged failure to pay wages and an insurance policy's definition of "wrongful acts." For example, in *Republic Franklin Ins. Co. v. Albemarle County School Board*, 2010 WL 2950499 (W.D. Va. 2010), the U.S. District Court for the Western District of Virginia reasoned:

> As other courts have recognized, an insured's negligent, willful, or intentional failure to honor a pre-existing obligation to pay money is not a "wrongful act" as that term is used in the policy. To find otherwise could encourage parties to routinely circumvent the requirements of the FLSA - whether negligently, willfully, or intentionally - because they have nothing to lose. "[I]t makes no sense to permit a dereliction of duty to transform an uninsured liability into an insured event," such a finding would create a "moral hazard," which cannot be countenanced.

*See id*. at *3 (quoting *Pacific Ins. Co., Ltd. v. Eaton Vance Mgmt.*, 369 F.3d 584, 593 (1st Cir. 2004)) (internal citations omitted except *Waste Corp. of America, Inc. v. Genesis Ins. Co.*, 382 F. Supp. 2d 1349, 1354-55 (S.D. Fla. 2005) (public policy prohibits placing insured in "unique posture of voluntarily choosing to do some act for which he knows an insurance company will compensate him even if he chooses wrongly")).

**MEMORANDUM DECISION AND ORDER - 8**

In short, the EPL Policy does not cover Integra's alleged failure to pay Plaintiff's commissions. Thus, if there is no genuine issue of material fact as to whether Plaintiff's claims against Integra relate solely to his unpaid commissions, Plaintiff's claims against Defendant here must be dismissed; conversely, if Plaintiff's claims against Integra relate to an otherwise covered wrongful employment act, Defendant's Motion for Summary Judgment must be denied.

    b.  *Plaintiff's Claims Against Integra Vis-à-Vis Claims for Unpaid Wages, Not Covered by the EPL Policy*

The "General Allegations" within Plaintiff's original First Amended Complaint detail the commissions Plaintiff allegedly earned prior to his termination, the agreement allegedly reached between Plaintiff and Integra to account for the commissions, and Integra's alleged failure to pay those same commissions. *See* First Am. Compl. at ¶¶ 5-14, attached as Ex. B to Lyon Aff. at ¶ 3 (Docket No. 13, Att. 4). Plaintiff's First Amended Complaint then sets out four claims for relief against Integra: (1) violation of the Idaho Wage Claim Act (Count One); (2) breach of contract against Integra (Count Two); (3) breach of the implied covenant of good faith and fair dealing against Integra (Count Three); and (4) breach of implied covenant of good faith and fair dealing in employment contract (Count Four). *See id.* at ¶¶ 15-37. To the extent these claims speak only to Plaintiff's lost commissions and nothing more, Plaintiff's current claims against Defendant fail as a matter of law.

    •   **Count One: Violation of the Idaho Wage Claim Act**

At Count One of his First Amended Complaint, Plaintiff asserted that "[t]he commissions guaranteed to Parish by Integra fall within the definition of 'wages' as found in the Idaho Wage Claims Act" and that "Integra's failure to pay the commissions due and owing to Parish is a

**MEMORANDUM DECISION AND ORDER - 9**

violation of the Idaho Wage Claims Act." *See id*. at ¶¶ 18-19. Such a claim relates squarely to Integra's alleged failure to pay commissions due. Plaintiff concedes as much, appropriately recognizing that Count One is a claim for unpaid wages and not covered by the EPL Policy. *See* Pl.'s Mem. in Opp. to Mot. for Summ. J., pp. 5-6 (Docket No. 16).

- **Counts Two and Three: Breach of Contract Against Integra and Breach of the Implied Covenant of Good Faith and Fair Dealing**

The operative contract anchoring Counts Two and Three of Plaintiff's First Amended Complaint is the "termination" agreement - the agreement entered into on the day Plaintiff was terminated from Integra that contains a "handwritten provision that Parish would be paid his commissions . . . ." *See* First Am. Compl. at ¶¶ 11-12, attached as Ex. B to Lyon Aff. at ¶ 3 (Docket No. 13, Att. 4). In particular, Plaintiff alleges:

> The agreement between Parish and Integra that Parish would be paid his full commission . . . constitutes a valid and binding contract.
>
> The failure to pay Parish's commissions due and owing . . . is a material breach of that contract.
>
> The contract between Integra and Parish for the payment of Parish's full commission . . . includes an implied covenant of good faith and fair dealing by both parties.
>
> By refusing to honor the contract by refusing to pay Parish's contractually promised commissions, Integra substantially nullified a benefit to which Parish was entitled under the contract, and thereby breached the implied covenant of good faith and fair dealing.

*See id*. at ¶¶ 23-24; 28-29. Again, Plaintiff's own allegations reflect that Counts Two and Three speak to Integra's alleged failure to pay Plaintiff his earned commissions. If so, such claims are not covered by the EPL Policy. *See, e.g.*, Def.'s Mem. in Supp. of Mot. for Summ. J., p. 8 (Docket No. 13, Att. 1) ("[Count Two] also did not trigger the EPL policy because the alleged

**MEMORANDUM DECISION AND ORDER - 10**

breach was failing to pay under the contract." . . . . "The crux of [Count Three] is that Integra, 'by refusing to pay Parish's contractually promised commissions . . . substantially nullified a benefit to which Parish was entitled under the contract.' Failing to pay a promised commission was not a type of act covered by the EPL policy.").

Plaintiff originally disagreed, arguing, broadly, that Counts Two and Three (and also Count Four) are not limited to recovering unpaid commissions:

> While the damages may be calculated by reference to amounts of unpaid compensation, the claim is not a claim for unpaid wages. Within Counts Two, Three, and Four, Parish asserted that as a result of the breach of contract and/or breaches of the implied covenant of good faith and fair dealing, Parish had suffered damages in excess of $10,000, to be proven with specificity at trial. Nothing in the Complaint provides that Parish's damages for those Counts are limited to solely a recovery of unpaid compensation.

*See* Pl.'s Mem. in Opp. to Mot. for Summ. J., p. 6 (Docket No. 16) (internal citations omitted). Although Plaintiff's briefing claimed that Counts Two and Three were not claims for unpaid wages (but may nonetheless be calculated using amounts of unpaid compensation), he failed to take the next step; that is, he neglected to once-and-for-all state what the claims are for, if not for unpaid wages. During oral argument, the Court rhetorically asked: as written, what else could Counts Two and Three represent? Plaintiff's counsel conceded that, like Count One, these claims relate to Integra's alleged failure to pay commissions due and, accordingly, are not covered by the EPL Policy.

- **Count Four: Breach of Implied Covenant of Good Faith and Fair Dealing in Employment Contract**

Count Four differs from Count Three in that the at-issue contract in Count Four deals with Plaintiff's underlying employment contract with Integra, not the termination agreement.

**MEMORANDUM DECISION AND ORDER - 11**

Still, within Count Four, Plaintiff alleged that "Integra terminated Parish's employment for the purpose of denying Parish the commissions he was entitled to under the terms of his employment contract" and that, "[b]y terminating Parish's employment for the purpose of denying Parish his contractually earned commissions, Integra substantially nullified a benefit to which Parish was entitled under the contract . . . ." *See* First Am. Compl. at ¶¶ 34-35, attached as Ex. B to Lyon Aff. at ¶ 3 (Docket No. 13, Att. 4). Therefore, Count Four's focus seemingly is also upon Plaintiff's unpaid commissions - arguably, the only *alleged* "'benefit' to which Parish was entitled under the contract." However, an alternate meaning to Count Four - sounding in wrongful termination - also presents itself,[6] such that it cannot be said in this summary judgment context, as a matter of law, that Plaintiff is *only* making a claim for unpaid wages/commissions through that cause of action.

    3.    <u>Plaintiff's Claim for Breach of Implied Covenant of Good Faith and Fair Dealing in Employment Contract (Count Four) and the EPL Policy's "Wrongful Termination" Provision</u>

Defendant alternatively argues that, even if Plaintiff's claim for breach of implied covenant of good faith and fair dealing in employment contract (Count Four) is read broadly to relate to a generic claim for wrongful termination (and not, simply, a claim for unpaid wages

---

[6] The Court has taken judicial notice of the Idaho Supreme Court Data Repository results for Plaintiff's initial suit against Integra in Idaho state court. *See* Case History, attached as Ex. F. to Lyon Aff. at ¶ 7 (Docket No. 13, Att. 8). The Court separately examined portions of that record (also taking judicial notice of the same), and found that Plaintiff's damages expert, W. David Eberle, issued a July 22, 2008 report titled "Review of the Present Valuation of Future Lost Earnings for Michael Parish." Mr. Eberle further commented that his firm "was engaged to prepare a present valuation calculation for the lost earnings for Michael Parish resulting from an alleged breach of contract and wrongful termination of employment." These factual particulars of the underlying state court case highlight the inferences that can reasonably be drawn from the evidence that a different claim exists - one bearing more resemblance to a wrongful termination claim than a contract claim.

**MEMORANDUM DECISION AND ORDER - 12**

(*see supra* at pp. 9-12)), it still is not covered "because such an act does not fit within the [EPL Policy's] definition of 'wrongful termination.'" *See* Def.'s Mem. in Supp. of Mot. for Summ. J., pp. 9-10 (Docket No. 13, Att. 1).[7]

As set forth earlier, the EPL Policy covered "wrongful employment acts" which was defined to include "wrongful termination." *See supra* at p. 7. The EPL Policy defines "wrongful termination" as:

> . . . the actual or constructive termination of an employment relationship or the demotion of or the failure to promote any Employee in a manner which is illegal and wrongful or in breach of an implied agreement to continue employment. Wrongful Termination shall not include a termination which is or is alleged to be in breach or violation of an express contract of employment or an express obligation to make payments in the event of the termination of employment.

*See* EPL Policy, attached as Ex. A to Lyon Aff. at ¶ 2 (Docket No. 13, Att. 3).

According to Defendant, any breach of the implied covenant of good faith and fair dealing with respect to Plaintiff's employment contract with Integra is a breach of the employment contract *itself*. *See* Def.'s Mem. in Supp. of Mot. for Summ. J., pp. 10-13 (Docket No. 13, Att. 1). Further, because the employment contract is an "express contract of employment," Plaintiff's alleged termination in breach of that employment contract is not wrongful termination under the EPL Policy. *See id.*

---

[7] Plaintiff concedes that Counts Two and Three (relating to the termination agreement) do not raise potential claims for wrongful termination. *See* Pl.'s Mem. in Opp. of Mot. for Summ. J., p. 7 (Docket No. 16) ("Parish does not dispute that a breach of the termination agreement or a breach of the implied covenant of good faith and fair dealing related to the termination agreement are not claims that are covered under the definition of "Wrongful Employment Act" set forth in the [EPL] Policy.").

**MEMORANDUM DECISION AND ORDER - 13**

Without disputing the express nature of his employment contract with Integra, Plaintiff argues that the employment contract "was both express and implied" given the existence of the *implied* covenant of good faith and fair dealing in every employment contract, including his employment contract with Integra. *See* Pl.'s Opp. to Mot. for Summ. J., pp. 8-9 (Docket No. 16). It is this implied component of the employment contract, Plaintiff argues, that operates to define Defendant's conduct as a wrongful termination pursuant to the EPL Policy. Additionally, Plaintiff argues that Count Four was actually a claim premised upon a breach of Integra's implied agreement to continue Plaintiff's employment and, thus, constitutes the sort of wrongful termination covered by the EPL Policy. *See id.* at p. 9 ("Thus, a termination of employment that violates the implied covenant of good faith and fair dealing is a termination of employment in breach of an implied agreement to continue employment.").

        a.     *A Breach of a Contract's Implied Covenant of Good Faith and Fair Dealing Generally Constitutes a Breach of that Underlying Contract*

By arguing that a contract's implied covenant of good faith and fair dealing transmutes an otherwise express contract into both an express and implied contract, Plaintiff overstates the effect of a contract's implied terms, including the implied covenant of good faith and fair dealing. It is true that express contracts can contain implied terms, obligating the parties to perform (or expect performance on) that express contract a certain way. *See Idaho Power Co. v. Cogeneration, Inc.*, 9 P.3d 1204, 1216 (Idaho 2000) ("The covenant requires that the parties perform, in good faith, the obligations imposed by their agreement.").[8]  A breach of these

---

[8] Without so deciding here, the Court assumes (the parties raised no argument to the contrary) that an implied covenant of good faith and fair dealing actually accompanied Plaintiff's express employment contract with Integra. *See Sorensen v. Comm Tek, Inc.*, 799 P.2d 70, 75 (Idaho 1990) (implied-in-law covenant of good faith and fair dealing exists in all employment relationships, including employment at-will relationships).

**MEMORANDUM DECISION AND ORDER - 14**

implied terms, however, is not a breach independent of the express contract itself when seeking damages for the benefits under that same contract. In other words, a breach of a contract's implied covenant of good faith and fair dealing represents a breach that is intrinsically linked to the contract giving rise to that implied covenant of good faith and fair dealing, when only contracted-for damages are sought. *See Burton v. Atomic Workers Fed. Credit Union*, 803 P.2d 518, 524 (Idaho 1990) (describing implied covenant of good faith and fair dealing "as a covenant in contract, not in tort, the breach of which is a 'breach of the employment contract, and is not a tort.'" (quoting *Metcalf v. Intermountain Gas Co.*, 778 P.2d 744, 749 (Idaho 1989))). Here, that contract - the employment contract between Plaintiff and Integra - is an express contract, a breach of which the EPL Policy would not address if the claimed damages reflect unpaid commissions or some other failure to pay something already earned.[9]

However, here, it is unclear whether Plaintiff, in pleading Count Four, is seeking to recover the benefit of his alleged unpaid commissions or the benefit of his employment with Integra (or, said another way, the benefit of *not* being terminated). *See supra* at pp. 11-12. Given such uncertainty, this Court cannot find - as Defendant urges it to do - that *any* alleged breach of the implied covenant of good faith and fair dealing specific to Plaintiff's express employment contract with Integra constitutes - as a matter of law - a breach of that employment contract that is not covered under the EPL Policy.[10]

---

[9] Otherwise, every claim for breach of the implied covenant of good faith and fair dealing (by virtue of its implication in every employment contract) will be covered under the EPL Policy or similar insurance policies. This Court is not ready to place such a mark in this case.

[10] Such a ruling would eviscerate any coverage under the EPL Policy for wrongful termination claims premised upon a breach of the implied covenant of good faith and fair dealing, even though the conduct might otherwise constitute a covered wrongful employment act

**MEMORANDUM DECISION AND ORDER - 15**

> b. *Plaintiff's Breach of Implied Covenant of Good Faith and Fair Dealing in Employment Contract Claim Against Integra as a Breach of an Implied Agreement to Continue Employment*

Plaintiff further argues that his breach of implied covenant of good faith and fair dealing in employment contract claim against Integra still falls within the EPL Policy's definition of wrongful termination because it amounts to "an implied agreement not to terminate an employee's employment (i.e. to continue employment) . . . ." *See* Opp. To Mot. for Summ. J., p. 9 (Docket No. 16).

In Idaho, the implied covenant of good faith and fair dealing "protects the parties' benefits in their employment contract or relationship, and . . . any action which violates, nullifies or significantly impairs any benefit or right which either party has in the employment contract, whether express or implied, is a violation of the covenant . . . ." *See Metcalf*, 778 P.2d at 749. While the prospect of continued employment could certainly qualify as a benefit to be protected via the implied covenant of good faith and fair dealing (*see Stalder v. Fred Meyer Stores, Inc.*, 2007 WL 1029020, * 5 (D. Idaho 2007)), it is unclear whether Plaintiff's actual breach of implied covenant of good faith and fair dealing in employment contract claim against Integra highlights a different "benefit" - his unpaid commissions. *See supra* at pp. 11-12.

Within Count Four of his First Amended Complaint, and in support of his breach of implied covenant of good faith and fair dealing in employment contract claim, Plaintiff alleged:

- The employment contract between Integra and Parish included an implied covenant of good faith and fair dealing by both parties.

- Upon information and belief, Integra terminated Parish's employment for the purpose of denying Parish the commissions he was entitled to under the terms of his employment contract.

---

under the EPL Policy's own definition of wrongful termination (*see supra* at p. 7 & 13).

**MEMORANDUM DECISION AND ORDER - 16**

- By terminating Parish's employment for the purpose of denying Parish his contractually earned commissions, Integra substantially nullified a benefit to which Parish was entitled under the contract, and thereby breached the implied covenant of good faith and fair dealing.

*See* First Am. Compl. at ¶¶ 33-35, attached as Ex. B to Lyon Aff. at ¶ 3 (Docket No. 13, Att. 4). Nowhere within these allegations (or throughout the First Amended Complaint) is there a reference to a benefit in the form of continued employment or, for that matter, wrongful termination or an employment action in contravention of public policy. That is to say, consistent with the balance of Plaintiff's First Amended Complaint, Count Four does not obviously seem to be alleging that Plaintiff's termination from Integra was wrongful, but only that Integra's alleged failure to pay Plaintiff his "contractually[-]earned commissions" upon his termination was wrongful and, as a result, violative of the implied covenant of good faith and fair dealing as to his employment contract with Integra.[11]

---

[11] In contrast, during oral argument, Plaintiff's counsel referenced another action in this District, on Judge Lodge's docket, where he claims to have alleged a similar wrongful termination claim on behalf of another client. Presumably, that case is *Hardenbrook v. United Parcel Service, Co.* Case No. 07-CV-509-EJL-CWD. Filed less than two months after the First Amended Complaint at issue here, the operative pleading in *Hardenbrook* clearly alleged - as Count One - a claim for "[r]etaliation in [v]iolation of Idaho [p]ublic [p]olicy." *See id*. at p. 5 (Docket No. 1, Att. 2). Moreover, within Count Three's breach of implied covenant of good faith and fair dealing claim, the complaint in *Hardenbrook* alleged that, "[b]y retaliating against [p]laintiffs for reporting violations of federal law, [defendant] substantially nullified benefits to which [p]laintiffs were entitled under the employment relationship, and thereby breached the implied covenant of good faith and fair dealing." *See id*. at p. 8. Finally, in *Hardenbrook*, the plaintiffs prayed for "judgment of the Court awarding . . . damages . . . incurred as a result of [defendant's] retaliation . . . in violation of Idaho public policy, breach of contract and breach of the implied covenant of good faith and fair dealing. *See id*. at p. 9. The allegations in *Hardenbrook* leave little doubt that plaintiffs, there, were making a claim for wrongful termination. Unfortunately, it is not so clear here when examining only the underlying First Amended Complaint. The Court does note that, in *this case* (perhaps to allay any questions in this Court's mind), Plaintiff's pleadings indicate that "[o]n or about November 6, 2008, Plaintiff reached a settlement with Integra for his claims against it for front pay damages relating to wrongful termination in the sum of $138,000.00." *See* Compl. at ¶ 23 (Docket No. 1).

**MEMORANDUM DECISION AND ORDER - 17**

Despite these shortcomings, as discussed above, it is nonetheless possible to interpret Count Four as stating a wrongful termination claim via an alleged breach of an implied covenant of good faith and fair dealing. *See supra* at pp. 11-12. Indeed, in *Metcalf*, the Idaho Supreme Court formally recognized such a cause of action - even in an employment-at-will context, as is the case here - finding that the implied covenant of good faith and fair dealing " . . . *protect[s] an employee from a discharge based on an employer's desire to avoid the payment of benefits already earned by the employee . . . .*" . See *Metcalf*, 778 P.2d at 749 (quoting *Wagenseller v. Scottsdale Mem'l Hosp.*, 710 P.2d 1025, 1040-41 (Ariz. 1985); emphasis in *Metcalf*).[12]

So, while the First Amended Complaint's Count Four does not explicitly identify the benefit Plaintiff claims he was denied by Integra's alleged conduct (*see supra* at pp. 16-17), it *does* allege that "Integra terminated Parish's employment for the purpose of denying Parish the commissions he was entitled to under the terms of his employment." *See* First Am. Compl. at ¶¶ 34-35, attached as Ex. B to Lyon Aff. at ¶ 3 (Docket No. 13, Att. 4).[13] Under *Metcalf* , such

---

[12] In *Metcalf*, the Idaho Supreme Court also cited a Massachusetts case where the covenant was applied to an employee who was fired so that the employer would not have to pay earned sales commissions. *See Metcalf*, 778 P.2d at 749 (citing *Fortune v. National Cash Register Co.*, 364 N.E.2d 1251 (Mass. 1977)).

[13] Notwithstanding Plaintiff's allegations, it would seem odd that Integra terminated Parish for the purpose of denying his commissions when, in his First Amended Complaint, Plaintiff himself alleges that, on the day of his termination, Plaintiff and Integra signed a memorandum outlining that Plaintiff "would be paid his commissions." *See* First Am. Compl. at ¶¶ 11-12, attached as Ex. B to Lyon Aff. at ¶ 3 (Docket No. 13, Att. 4). Relatedly, following oral argument, the parties jointly submitted the May 25, 2007 "termination agreement" which outlined in no uncertain terms the protocol - "[a]s per the CAM Policy Agreement" - for compensating Plaintiff his commissions following his termination. Regardless, at this point in the proceedings, the Court is not tasked with resolving substantive matters; rather, in considering Defendant's Motion for Summary Judgment, the undersigned need only determine whether the EPL Policy excludes the claims made in the underlying First Amended Complaint as a matter of law. Whether Plaintiff was actually wrongfully terminated is beyond the scope of this Memorandum Decision and Order.

**MEMORANDUM DECISION AND ORDER - 18**

conduct is actionable. *See supra* at p. 18. As a consequence, the Court cannot find, as a matter of law, that the EPL Policy does not cover such a claim when its definition of "wrongful termination" includes "the actual . . . termination of an employment relationship . . . *in a manner which is illegal and wrongful* . . . ." *See supra* at p. 13 (emphasis added).[14]

Because it is unclear whether Count Four of Plaintiff's First Amended Complaint against Integra speaks to a claim covered by the EPL Policy, Defendant's Motion for Summary Judgment must be denied at this stage of the litigation.[15]

## ORDER

Based upon the foregoing, it is HEREBY ORDERED that Defendant's Motion for Summary Judgment (Docket No. 13) is GRANTED in part and DENIED in part. Specifically, Counts One through Three within Plaintiffs' underlying First Amended Complaint are not

---

[14] This finding is not intended to suggest that a claim for breach of implied covenant of good faith and fair dealing automatically creates an implied agreement of continued employment in an at-will employment relationship or somehow creates a duty to dismiss an employee only for cause. The implied covenant of good faith and fair dealing does not alter any at-will employment relationship; instead, it operates only to protect any other rights or benefits enjoyed by the employee as part of the employment relationship.

[15] The Court is careful not to construe Count Four as actually stating such a claim, lest it risk the granting of a non-existent motion for summary judgment on Plaintiff's behalf. Instead, the Court only finds that a question of fact exists as to the nature of the claims (and damages sought) through Plaintiff's underlying claims against Integra. To the extent Count Four is ultimately understood to represent a claim for wrongful termination, the Court notes that Plaintiff's original Complaint against Integra did not include Count Four; only the subsequent, September 17, 2007 First Amended Complaint included this claim. This would seem significant to Defendant when understanding that Integra's September 11, 2007 correspondence to Defendant (*see supra* at p. 2) could not have referenced a claim covered under the EPL Policy, when taking into account Plaintiff's counsel's concession during oral argument that Counts One through Three represent wage claims, not covered by the EPL Policy. Based upon the record now before the Court, the first time Defendant was made aware of the First Amended Complaint and, likewise, Count Four, was May 12, 2008 - almost nine months after the action was originally brought, and less than six months before its settlement.

**MEMORANDUM DECISION AND ORDER - 19**

covered under the EPL Policy; to this extent, Defendant's Motion for Summary Judgment (Docket No. 13) is granted. However, it cannot be said as a matter of law that Count Four is not covered under the EPL Policy; to this extent, Defendant's Motion for Summary Judgment (Docket No. 13) is denied.

Though it is this Court's policy to accept only one dispositive motion per party (*see* 6/30/10 CMO (Docket No. 9)), Defendant's counsel is permitted to file a motion seeking leave from the CMO to file a second dispositive motion in the event such briefing is ultimately necessary.

**IT IS SO ORDERED.**

DATED: **December 28, 2010**.

*[signature]*

Honorable Ronald E. Bush
U. S. Magistrate Judge